USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/23/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION<br>600 Pennsylvania Ave., N.W.<br>Washington, D.C. 20580 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No.  15-cv-3031 (ER) |
| CARDINAL HEALTH, INC.<br>7000 Cardinal Place<br>Dublin, OH 43017 | ) ) ) ) | |
| Defendant. | ) ) ) | |

## ~~[PROPOSED]~~ FINAL ORDER AND STIPULATED PERMANENT INJUNCTION

**WHEREAS** Plaintiff, Federal Trade Commission ("Plaintiff" or "Commission"), filed its

Complaint on April __, 2015, pursuant to Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 53(b), seeking injunctive and other equitable relief, including

disgorgement, for violations of Section 5 of the FTC Act, 15 U.S.C. § 45;

**AND WHEREAS**, in conjunction with the filing of this Final Order and Stipulated

Permanent Injunction ("Final Order"), Plaintiff and Cardinal Health, Inc. ("Defendant

Cardinal"), by its attorney, have stipulated and agreed to entry by the Court of this Final Order

without trial or adjudication of any issue of fact or law;

**AND WHEREAS**, this Final Order is entered for settlement purposes only and does not

constitute any evidence against, or an admission of liability or of any issue of fact, other than

jurisdictional, or law, by Defendant Cardinal;

**AND WHEREAS**, Defendant Cardinal agrees to be bound by the provisions of this Final

Order pending its approval by the Court;

AND WHEREAS, Plaintiff requires Defendant Cardinal to perform certain injunctive relief in order to prevent further violations and help remedy the competition lost as alleged in the Complaint;

AND WHEREAS, Plaintiff requires Defendant Cardinal to remit payment to the Commission in the amount of $26.8 million as disgorgement and redress for lost competition;

AND WHEREAS, Defendant Cardinal has represented to Plaintiff that the relief set forth herein can and will be made and that Defendant Cardinal will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any of the relief provisions contained in the Final Order;

AND WHEREAS, Defendant Cardinal has agreed that a Monitor will be appointed to oversee Defendant Cardinal's actions to achieve the remedial purposes of this Final Order;

AND WHEREAS, Defendant Cardinal agrees to the entry of this Final Order under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b);

NOW THEREFORE, without trial or adjudication of any issue of fact or law, and upon consent of the parties,

IT IS ORDERED, ADJUDGED AND DECREED THAT:

## I. Findings

A.    This Court has jurisdiction over the subject matter of, and each of the parties to, this action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1337 and 1345.

B.    The Complaint states a claim upon which relief may be granted against Defendant Cardinal under Sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45 and 53(b).

C.    Defendant Cardinal transacts business in the State of New York.  Venue is proper in this

Court under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1381(b) and (c).

D.    The parties, by and through their counsel, have agreed that entry of this Order fully and finally resolves all issues between them arising from the specific events giving rise to the allegations described in the Complaint and precludes further litigation between the FTC and Cardinal on the resolved issues except for purposes of enforcing this Order.

E.    Defendant Cardinal waives all rights to appeal or otherwise challenge or contest the validity of this Final Order, and Defendant Cardinal waives any claim under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## II. Definitions

As used in this Final Order:

A.    "Defendant Cardinal" means Defendant Cardinal Health, Inc., an Ohio corporation, with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017, its directors, officers, employees, agents and representatives, predecessors, successors, and assigns; its joint ventures, subsidiaries, divisions, groups and affiliates controlled by Defendant Cardinal Health, Inc., and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

B.    "Commission" means the Federal Trade Commission.

C.    "Antitrust Laws" means the Federal Trade Commission Act, as amended, 15 U.S.C. § 41 *et seq.*, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, and the Clayton Act, 15 U.S.C. §12 *et seq*.

D.    "Commerce" means commerce as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

3

E.   "Contract Areas" means Spokane, Washington; Omaha-Lincoln, Nebraska; Knoxville, Tennessee; Lexington, Kentucky; Gainesville, Florida; and Little Rock, Arkansas.

F.   "Covered Employees" means:

1.   all Nuclear Pharmacy Services employees; and

2.   any executive or manager of Defendant Cardinal with any direct oversight or management responsibilities over Defendant Cardinal's Nuclear Pharmacy Services. *PROVIDED, HOWEVER,* that "Covered Employees" shall not include Nuclear Pharmacy Services employees who are part-time employees, janitorial employees, employees who primarily function as delivery personnel, or hourly-paid employees.

G.   "Customer" means any third party that purchases, or will purchase, Radiopharmaceuticals from Defendant Cardinal's Nuclear Pharmacies that Defendant Cardinal operates in the Contract Areas.

H.   "Customer Contract" means any contract between Defendant Cardinal and any Customer for the preparation, dispensing, and distribution of Radiopharmaceuticals, and any agreement placing, extending or modifying any obligation or incentive of the customer to purchase Radiopharmaceuticals from Cardinal, including, but not limited to, Syntrac agreements. *PROVIDED, HOWEVER,* that Customer Contract shall not include any contract solely for the preparation, dispensing, and distribution of High-energy Radiopharmaceuticals, or where the Customer has committed to purchase only High-energy Radiopharmaceuticals.

I.   "Distributor" means a Person who engages in the wholesale purchase of one or more Radiopharmacy Inputs or Products from a Manufacturer and the re-sale of those Radiopharmacy Inputs or Products.

J.   "Exclusive Agreement" means an agreement or understanding, either express or implied, written or unwritten, in or affecting Commerce, with any supplier concerning the distribution of a Radiopharmaceutical or Radiopharmacy Input or Product, that prohibits, directly or indirectly, the supplier of the Radiopharmaceutical or Radiopharmacy Input or Product from selling such Radiopharmaceutical or Radiopharmacy Input or Product to another Distributor not a party to the agreement or understanding.

K.   "High-energy Radiopharmaceuticals" means any positron emission tomography (PET) Radiopharmaceutical.

L.   "Manufacturer" means a Person who manufactures, develops, or produces one or more Radiopharmacy Inputs or Products.

M.   "Nuclear Pharmacy" means a pharmacy dedicated to the preparation, dispensing, and distribution of Radiopharmaceuticals. *PROVIDED, HOWEVER,* that "Nuclear Pharmacy" shall not include cyclotron equipment and assets that are associated with the manufacture of High-energy Radiopharmaceuticals.

N.   "Nuclear Pharmacy Services" means the division, department, subsidiary, or business unit of Defendant Cardinal with responsibility for the sale and distribution of Radiopharmaceuticals and/or the operation of Radiopharmacies owned or managed by Defendant Cardinal.

O.   "Person" means any individual, partnership, joint venture, firm, corporation, association, trust, unincorporated organization, joint venture, or other business or governmental entity, and any subsidiary, division, group or affiliate thereof.

P.   "Radiopharmaceutical" means a drug containing a radioactive isotope which can be used in diagnostic nuclear medicine studies, diagnostic nuclear medicine imaging, therapeutic

5

nuclear medicine treatments, or diagnostic molecular imaging, including but not limited to "diagnostic radiopharmaceuticals" as this term is defined by the United States Food and Drug Administration at 21 C.F.R. § 315.2. *PROVIDED, HOWEVER*, that "Radiopharmaceutical" does not include High-energy Radiopharmaceuticals.

Q. "Radiopharmacy Input(s) or Product(s)" means the materials used or sold in the operation of a radiopharmacy, including, but not limited to, Radiopharmaceuticals, radioactive isotopes, chemical agents, compounded and non-compounded Radiopharmaceuticals. *PROVIDED, HOWEVER,* that "Radiopharmacy Input(s) or Product(s)" does not include High-energy Radiopharmaceuticals.

### III. Exclusive Distribution Agreements

A. Defendant Cardinal shall not enter into, participate in, implement, or continue any Exclusive Agreement if, by so doing, Defendant Cardinal would simultaneously be a party to more than one Exclusive Agreement for Radiopharmaceuticals or Radiopharmacy Inputs or Products that: (a) share common indications and usage in the United States; (b) are indicated for making images of the same body part including, but not limited to, kidneys, brain, bones, lungs, breast, gallbladder, heart, esophagus, lymphatic system, or blood vessels; or (c) are chemically equivalent or constitute the same radioactive isotope.

B. Defendant Cardinal shall provide to the Commission:

1. within sixty (60) days after entry of this Final Order as part of its compliance report, a copy or description of any and all Exclusive Agreements in existence as of the date this Final Order becomes final, and

2. written notice, thirty (30) days before entering into or renewing any Exclusive

Agreement (hereinafter referred to as the "first notification period").  If, within

the first notification period, representatives of the Plaintiff request additional time

to assess the competitive effects of such Exclusive Agreement, Defendant

Cardinal shall not enter into or renew any Exclusive Agreement until thirty (30)

days after such request is made.  Defendant Cardinal's written notice shall

include:

a.   a copy of the proposed agreement; and

b.   to the extent not reflected therein:

    i.   the identification of all parties to such agreement;

    ii.   product(s) involved including, but not limited to, the primary

        indicated diagnostic or therapeutic uses of such product(s), the

        benefits and characteristics of such product(s), a list of other

        products, if any, that are indicated for the same diagnostic or

        therapeutic use;

    iii.   the time period during which the agreement is in effect;

    iv.   all terms related to the exclusivity and compensation (including

        prices, profit or revenue sharing, geographic scope and exclusive

        territories covered, promotional services or obligations, royalties,

        and other payments); and

    v.   each product's current annual national sales, if known, or projected

        annual sales under the Exclusive Agreement.

c.   Early termination of the notification periods in this Paragraph may be

    requested and, where appropriate, granted by letter from the Federal Trade

Commission, Bureau of Competition.

### IV. Coercion and Retaliation Prohibited

A.   Defendant Cardinal shall not directly or indirectly, or through any corporate or other device, in connection with the actual or potential purchase, sale, or distribution of any Radiopharmacy Input or Product, in or affecting Commerce:

1.   Condition the sale, purchase, or distribution of a Radiopharmacy Input or Product by Defendant Cardinal, based on a Manufacturer's sale, or an intention to sell, a Radiopharmacy Input or Product to any Distributor other than Defendant Cardinal;

2.   Coerce, threaten, or pressure a Manufacturer to refuse to sell a Radiopharmacy Input or Product, or limit its sales of a Radiopharmacy Input or Product to any Person other than Defendant Cardinal;

3.   Discriminate against, penalize, or otherwise retaliate against a Manufacturer based on a Manufacturer's sale, or an intention to sell, one or more Radiopharmacy Inputs or Products to any Distributor other than Defendant Cardinal.  Examples of prohibited conduct under this subsection shall include, but not be limited to, the following forms of retaliation when based on a Manufacturer's sale, or an intention to sell, one or more Radiopharmacy Inputs or Products to any Distributor other than Defendant Cardinal:

a.   Terminating, suspending, reducing, or delaying, or threatening or proposing thereto, purchases of a Manufacturer's products; or

b.   Terminating, suspending, reducing, or delaying, or threatening or proposing thereto, the sales or promotion of a Manufacturer's product.

8

B.      Within ninety (90) days after the date this Final Order becomes final, Defendant Cardinal

shall terminate, waive, or modify any condition, requirement, policy, agreement, contract,

or understanding with any Manufacturer that is inconsistent with the terms of this Final

Order.

*PROVIDED, HOWEVER*, that nothing in this Final Order requires Defendant Cardinal to

continue purchasing the same volume of products from any Manufacturer as in previous years if

there is a reduced demand for such products from Defendant Cardinal's customers at Defendant

Cardinal's then current prices or margins or if Defendant Cardinal's reduction in purchases with

the Manufacturer is based on an alternative supplier's lower prices or more favorable terms *and*

*not* on such Manufacturer's sale, or an intention to sell, a Radiopharmacy Input or Product to any

Distributor other than Defendant Cardinal.

*PROVIDED FURTHER, HOWEVER,* that the following will not constitute, in and of itself, a

violation of this Final Order:  (a) Defendant Cardinal's modification of its business relationship

or purchases with a Manufacturer, including a refusal to deal with a Manufacturer, for verifiable

business reasons unrelated to whether the Manufacturer sells, or intends to sell, any

Radiopharmacy Input or Product to any Distributor or Distributors other than Defendant

Cardinal, (b) Defendant Cardinal's agreement (including any related proposals, discussions and

negotiations) with a Manufacturer to be an exclusive Distributor of any Radiopharmacy Input or

Product unless otherwise prohibited by Paragraph III, (c) Defendant Cardinal's conditioning the

purchase or distribution of a Radiopharmacy Input or Product based on a Manufacturer's

agreement to provide Defendant Cardinal with terms and conditions of sale no less favorable

than those provided to any other Distributors, and (d) Defendant Cardinal's enforcement of its

rights under an Exclusive Agreement, which agreement was disclosed in accordance with

9

Paragraph III.B, and does not otherwise violate Paragraph III.

## V. Contracts

A. Defendant Cardinal shall, within ten (10) days after the date of the Final Order, notify each Customer in the Contract Areas of such Customer's right to terminate its Customer Contract(s) with Defendant Cardinal.  Such notification shall be in the form of the notification attached as Exhibit A to this Final Order, return receipt requested.

*PROVIDED, HOWEVER,* that if the Customer Contract includes High-energy Radiopharmaceuticals, Defendant Cardinal shall notify the Customer that the Customer Contract can be terminated with respect to Radiopharmaceuticals, but not with respect to High-energy Radiopharmaceuticals, and does not otherwise alter the Customer Contract.

*PROVIDED FURTHER, HOWEVER*, that if the Customer Contract provides for the sale and distribution of Radiopharmaceuticals by Nuclear Pharmacies that Defendant Cardinal operates outside the Contract Areas, Defendant Cardinal shall notify the Customer that the Customer Contract can be terminated with respect to the sale and distribution of Radiopharmaceuticals by Nuclear Pharmacies that Defendant Cardinal operates in the Contract Areas, and does not otherwise alter the Customer Contract.

B. Defendant Cardinal shall terminate Customer Contract(s) within thirty (30) days of receiving a Customer's request to terminate.  Each Customer's right to terminate its Customer Contract(s) shall remain in place for thirty-six (36) months after this Final Order is entered by the Court.  The Customer's right to terminate shall apply to any, and all, Customer Contract(s) in effect, or entered into, during the twenty-four (24) month period after the date the Final Order is entered by the Court.

*PROVIDED, HOWEVER,* that the Customer's right to terminate its Customer Contract(s)

10

*shall not* apply to any Customer Contract newly signed by Customers on a date after such twenty-four (24) month period has expired.

C.  The Customer's right to terminate its Customer Contracts, or any portion thereof, shall be without penalty, charge or any form of early termination fee.  The Customer's intent or request to terminate its Customer Contract, or any portion thereof, shall not be the basis for any threatened or actual claim of breach of the Customer Contract, directly or indirectly administered against the Customer.

*PROVIDED, HOWEVER* that Defendant Cardinal shall maintain its rights to receive payment for goods received and services rendered prior to termination, pursuant to the Customer Contract.

D.  Defendant Cardinal shall waive enforcement of, and shall not enforce, any provision(s) in its contracts with group purchasing organizations ("GPOs") that make Cardinal the "sole source" or exclusive contractual provider of Radiopharmaceuticals to GPO members in the Contract Areas.  This subparagraph shall apply only with respect to GPO members' facilities within the Contract Areas and shall remain in place for twenty-four (24) months after the date the Final Order is entered by the Court.

E.  Defendant Cardinal shall take no action to prevent, restrict, limit, or interfere in any way with the ability of any Distributor of Radiopharmaceutical Inputs or Products to contract with any GPO for the right to distribute any Radiopharmaceutical Input or Product to GPO members located in the Contract Areas.

*PROVIDED, HOWEVER,* that the Final Order shall not require Defendant Cardinal to affirmatively terminate, amend or modify any contracts entered into with GPOs.

## VI. Prior Notice

A.   For a period commencing on the date of entry of this Final Order and continuing for ten (10) years, Defendant Cardinal shall not, without providing advance written notification to the Plaintiff, acquire, directly or indirectly, through subsidiaries or otherwise, any ownership, leasehold, or other interest, in whole or in part, including any joint venture interest, in any Nuclear Pharmacy within 60 miles of where Defendant Cardinal currently owns or operates a Nuclear Pharmacy;

B.   Said notification shall be given on the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended (hereinafter referred to as "the Notification"), and shall be prepared and transmitted in accordance with the requirements of that part, except that (1) no filing fee will be required for any such notification, (2) notification shall be filed with the Secretary of the Federal Trade Commission and need not be made to the United States Department of Justice, and (3) notification is required only of Defendant Cardinal and not of any other party to the transaction.  Defendant Cardinal shall provide the Notification to the Plaintiff at least thirty (30) days prior to consummating any such transaction (hereinafter referred to as the "first waiting period").  If, within the first waiting period, representatives of the Plaintiff make a written request for additional information or documentary material (within the meaning of 16 C.F.R. § 803.20), Defendant Cardinal shall not consummate the transaction until thirty (30) days after submitting such additional information or documentary material.  Early termination of the waiting periods in this Paragraph may be requested and, where appropriate, granted by letter from the Federal Trade Commission, Bureau of Competition.  *PROVIDED, HOWEVER,* that prior notification shall not be

required by this Paragraph for a transaction for which notification is required to be made, and has been made, pursuant to Section 7A of the Clayton Act, 15 U.S.C. § 18a.

## VII.  Compliance Program

Defendant Cardinal shall:

A.    Within ninety (90) days of entry of this Final Order, establish an antitrust compliance program for its Nuclear Pharmacy Services business in the United States that sets forth the policies and procedures Defendant Cardinal has implemented to comply with the requirements of this Order and with the Antitrust Laws.

B.    For the duration of this Final Order, maintain an antitrust compliance program under this Paragraph VII which, among other things, includes:

    1.    The appointment and retention of an antitrust compliance officer to supervise Defendant Cardinal's antitrust compliance program.  Defendant Cardinal may appoint successive antitrust compliance officers, but each must be an employee or officer of, or antitrust counsel for, Defendant Cardinal;

    2.    Training regarding Defendant Cardinal's obligations under this Final Order and the Antitrust Laws as applied to Defendant Cardinal's Nuclear Pharmacy Services business in the United States:

        a.    at least annually to all Covered Employees, but within sixty (60) days after the compliance program is established; and

        b.    within thirty (30) days after an individual first becomes a Covered Employee.

3.      Provisions that enable Covered Employees to ask questions about, and report

violations of, this Final Order and the Antitrust Laws confidentially and without

fear of retaliation of any kind;

4.      Discipline of Covered Employees for failure to comply with this Final Order and

the Antitrust Laws; and

5.      Provisions for maintaining records showing that Defendant Cardinal has complied

with, and is complying with, the provisions of the antitrust compliance program,

including but not limited to, records showing that the Covered Employees have

received all trainings required under this Final Order.

## VIII. Disgorgement

Not later than three (3) days after entry of this Final Order, Defendant Cardinal shall pay

to the Plaintiff a sum equal to $26,800,000 (twenty-six million eight hundred thousand and

00/100 dollars) under the following terms and conditions:

A.      The payment must be made by wire transfer in accord with directions provided by the

Plaintiff or by certified check or other guaranteed funds made payable to and delivered to

the Plaintiff and shall not accrue interest.  Defendant Cardinal shall have, or retain, no

dominion, control or title to the monies transferred to the Plaintiff, and all legal and

equitable title to said monies shall be vested in the Plaintiff, for use according to the

terms of this Final Order.

B.      All funds paid pursuant to this Final Order shall be deposited into a fund administered by

the Plaintiff, or its agent, to be used for equitable relief, including but not limited to, relief

for antitrust injury and to pay any attendant costs for the administration of any such relief

fund.  If direct relief for antitrust injury is wholly or partially impracticable or funds

14

remain after such relief is completed, the Plaintiff may apply any remaining funds for such other equitable relief as it determines to be reasonably related to the unlawful acts or practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant Cardinal shall have no right to challenge the Plaintiff's choice of remedies under Paragraph VIII of this Final Order. Defendant Cardinal shall have no right to contest the manner of distribution chosen by the Plaintiff.

C. Defendant Cardinal shall not make any claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise; and in the event of Defendant Cardinal's bankruptcy, the funds shall not be part of the debtor's estate, nor shall the estate have any claim or interest therein.

D. Defendant Cardinal's payment to the Plaintiff as required by this Order is remedial and is neither a penalty nor a fine.

## IX. Monitor

A. Within ten (10) days after this Final Order is entered, the Commission shall appoint a Monitor. The Commission shall select the Monitor, subject to the consent of Defendant Cardinal, which consent shall not be unreasonably withheld. If Defendant Cardinal has not opposed, in writing, including the reasons for opposing, the selection of a proposed Monitor within five (5) days after notice by the staff of the Commission to Defendant Cardinal of the identity of any proposed Monitor, Defendant Cardinal shall be deemed to have consented to the selection of the proposed Monitor.

B. Not later than one (1) day after appointment of the Monitor, Defendant Cardinal shall execute an agreement that, subject to the prior approval of the Commission, confers on

the Monitor all the rights and powers necessary to permit the Monitor to monitor Defendant Cardinal's compliance with all of its obligations and responsibilities under Paragraph V of the Final Order.

C.    The Monitor shall be appointed for a period of 36 months from the date the Final Order is entered by the Court.

D.    Defendant Cardinal shall consent to the following terms and conditions regarding the powers, duties, authorities, and responsibilities of the Monitor:

    1.    The Monitor shall have the power and authority to monitor Defendant Cardinal's compliance with the terms of Paragraph V the Final Order, and shall exercise such power and authority and carry out the duties and responsibilities of the Monitor in a manner consistent with Paragraph V of the Final Order. The Monitor shall, in consultation with the Commission, assure that Defendant Cardinal expeditiously complies with all of its obligations and performs all of its responsibilities as required by Paragraph V this Final Order.

    2.    The Monitor shall act in a fiduciary capacity for the benefit of the Commission.

    3.    Subject to any demonstrated legally recognized privilege, the Monitor shall have full and complete access to Defendant Cardinal's personnel, books, documents, records kept in the normal course of business, facilities and technical information, and such other relevant information as the Monitor may reasonably request, related to Defendant Cardinal's compliance with its obligations under Paragraph V of the Final Order. Defendant Cardinal shall cooperate with any reasonable request of the Monitor and shall take no action to interfere with or impede the Monitor's ability to monitor Defendant Cardinal's compliance with Paragraph V

of the Final Order.

4.    The Monitor shall serve, without bond or other security, at the expense of Defendant Cardinal on such reasonable and customary terms and conditions as the Commission may set. The Monitor shall have authority to employ, at the expense of Defendant Cardinal, such consultants, accountants, attorneys and other representatives and assistants as are reasonably necessary to carry out the Monitor's duties and responsibilities. The Monitor shall account for all expenses incurred, including fees for services rendered, subject to the approval of the Commission.

5.    Defendant Cardinal shall indemnify the Monitor and hold the Monitor harmless against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Monitor's duties, including all reasonable fees of counsel and other reasonable expenses incurred in connection with the preparations for, or defense of, any claim, whether or not resulting in any liability, except to the extent that such losses, claims, damages, liabilities, or expenses result from gross negligence, malfeasance, willful or wanton acts, or bad faith by the Monitor.

6.    The Monitor Agreement shall provide that within one (1) month from the date the Monitor is appointed pursuant to this paragraph, and every sixty (60) days thereafter, the Monitor shall report in writing to the Commission concerning performance by Defendant Cardinal of its obligations under Paragraph V of the Final Order.

7.    Defendant Cardinal may require the Monitor and each of the Monitor's

consultants, accountants, attorneys, and other representatives and assistants to sign a customary confidentiality agreement. *PROVIDED, HOWEVER,* such agreement shall not restrict the Monitor from providing any information to the Commission.

E.   The Commission may, among other things, require the Monitor and each of the Monitor's consultants, accountants, attorneys, and other representatives and assistants to sign an appropriate confidentiality agreement relating to Commission materials and information received in connection with the performance of the Monitor's duties.

F.   If the Commission determines that the Monitor has ceased to act or failed to act diligently, the Commission may appoint a substitute Monitor:

   1.   The Commission shall select the substitute Monitor, subject to the consent of Defendant Cardinal, which consent shall not be unreasonably withheld. If Defendant Cardinal has not opposed, in writing, including the reasons for opposing, the selection of a proposed Monitor within ten (10) days after notice by the staff of the Commission to Defendant Cardinal of the identity of any proposed Monitor, Defendant Cardinal shall be deemed to have consented to the selection of the proposed Monitor.

   2.   Not later than ten (10) days after appointment of the substitute Monitor, Defendant Cardinal shall execute an agreement that, subject to the prior approval of the Commission, confers on the Monitor all the rights and powers necessary to permit the Monitor to monitor Defendant Cardinal's compliance with Paragraph V of the Final Order in a manner consistent with the purposes of the Final Order.

G.   The Commission may on its own initiative, or at the request of the Monitor, ask this

Court to issue such additional orders or directions as may be necessary or appropriate to assure compliance with the requirements of the Final Order.

## X.  Non-Interference with Nuclear Pharmacy Entrant

For a period of five (5) years from the date this Final Order is signed, Defendant Cardinal shall not file, formally or informally, directly or indirectly, with any local, state, or federal regulatory or licensing entity any objections to, or negative comments about, an application by any person or entity attempting to establish or acquire a Nuclear Pharmacy in any of the Contract Areas. *PROVIDED, HOWEVER*, that nothing in Paragraph X of this Final Order shall prohibit Defendant Cardinal from providing information in response to a formal request from any local, state, or federal regulatory or licensing entity. *PROVIDED FURTHER, HOWEVER,* that Defendant Cardinal shall submit to the Commission (i) the request for comments from the local, state, or federal regulatory or licensing entity within (10) days of its receipt, and (ii) a copy of the response to such request, within five (5) days of its submission.

## XI.  Reporting Requirements

A.    Within sixty (60) days after the date this Final Order becomes final, and sixty (60) days thereafter, Defendant Cardinal shall submit to the Commission a verified written report setting forth in detail the manner and form in which Defendant Cardinal has complied, is complying, and will comply with this Final Order.  For the periods covered by these two reports, the reports shall include, *but not be limited to*:

1.    A copy or description of any and all Exclusive Agreements in existence as of the date this Final Order becomes final, pursuant to Paragraph III;

2.    Notices made by Defendant Cardinal pursuant to Paragraph IV.B;

3.    Copies of the return receipts from the notices made pursuant to Paragraph V.A.;

4. The name, title, business address, e-mail address, and business phone number of the officer or director designated by Defendant Cardinal to oversee the compliance program, pursuant to Paragraph VII; and

5. Documentation of the payment made pursuant to Paragraph VIII.A.

B. One (1) year after the date this Final Order becomes final, and annually for the following nine (9) years on the anniversary of the date this Final Order becomes final, as well as at any other such times as the Commission may require, Defendant Cardinal shall file a verified written report with the Commission setting forth in detail the manner and form in which it has complied and is complying with the Final Order.

## XII.  Change of Corporate Control

Defendant Cardinal shall notify the Commission at least thirty (30) days prior to:

A. any proposed dissolution of Defendant Cardinal;

B. any proposed acquisition, merger, or consolidation of Defendant Cardinal; or

C. any other change in Defendant Cardinal, including, but not limited to, assignment and the creation or dissolution of subsidiaries, if such change might affect compliance obligations arising out of this Final Order.

## XIII.  Access to Information

A. For the purpose of determining or securing compliance with this Final Order, and subject to any legally recognized privilege, and upon written request with reasonable notice to Defendant Cardinal, Defendant Cardinal shall permit any duly authorized representative of the Plaintiff:

1. Access, during office hours and in the presence of counsel, to all facilities and access to inspect and copy, at Defendant's expense, all non-privileged books,

ledgers, accounts, correspondence, memoranda and other records and documents in the possession or under the control of Defendant Cardinal relating to any matter contained in this Final Order; and

2. Upon five (5) days' notice to Defendant Cardinal and without restraint or interference from them, to interview officers, directors, or employees of Defendant Cardinal, who may have counsel present, regarding any such matters.

B. No information or documents obtained by the means provided in this Paragraph XIII shall be divulged by the Plaintiff to any person other than an authorized representative of the Plaintiff, except in the course of legal proceedings to which the Plaintiff is a party, or for the purpose of securing compliance with this Final Order, or as otherwise required by law.

## XIV. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Order to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Order, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV. Expiration of Final Order

Unless this Court grants an extension, this Final Order shall expire ten (10) years from the date of its entry.

## XVI. Public Interest Determination

Entry of this Final Order is in the public interest.

**SO ORDERED**, this 23$^{d}$ day of _____ Apri l _____, 2015

_____
United States District Court Judge

**EXHIBIT A**

[Customer Notice]

On Official Cardinal Letterhead
Certified Mail, Return Receipt Requested

[Date]

Name
Company Name
Address
City, State ZIP

Re: Notification of Your Right to Terminate Contract

Dear [Cardinal Customer]:

This letter is to notify you that you now have the right to terminate your contract(s) with Cardinal Health for the purchase of low-energy radiopharmaceuticals, if you choose to do so. Pursuant to a settlement with the Federal Trade Commission ("FTC"), we are required to give you this notice.

Your option to terminate is being granted to allow you the opportunity to contract with a radiopharmacy, other than Cardinal Health, for the provision of low-energy radiopharmaceuticals to your facility or facilities serviced by Cardinal Health nuclear pharmacies located in Spokane, Washington; Omaha, Nebraska; Lincoln, Nebraska; Knoxville, Tennessee; Lexington, Kentucky; Gainesville, Florida; or Little Rock, Arkansas.

The FTC alleged that Cardinal Health engaged in certain conduct that raised competitive concerns, and Cardinal Health reached a settlement with the FTC. While there was no judicial determination of wrongdoing nor admission of a problem, Cardinal Health agreed to settle the charges, and a Final Order and Stipulated Permanent Injunction ("Court Order") was entered by the United States District Court for the Southern District of New York, on _____. The Court Order, as well as related documents, are available at [*insert url*], if you would like more details about the settlement.

The Court Order requires, among other things, that Cardinal Health give you the option of terminating, without fee or penalty, your contract(s) with Cardinal Health for the purchase of low-energy radiopharmaceuticals. This option extends to any contract(s) with Cardinal Health, including Syntrac agreements, that creates an obligation to purchase low-energy radiopharmaceuticals from Cardinal Health.

A-1

Your option and/or decision to terminate will not alter your contract(s) with Cardinal Health with respect to the purchase of low-energy radiopharmaceuticals from other Cardinal Health nuclear pharmacies located outside the above referenced geographic areas. In addition, if you purchase low-energy radiopharmaceuticals from Cardinal Health pursuant to a contract that includes purchases of high-energy radiopharmaceuticals, your option and/or decision to terminate will not affect provisions of the contract(s) that relate solely to high-energy radiopharmaceutical purchases, *i.e.*, PET products.

You have the right to terminate your contract(s) until [*enter date three years after the entry of the Final Order*]. Your right to terminate applies to any contract(s) in effect or entered into prior to [*enter date two years after the entry of the Final Order*]. *However,* please note that your right to terminate your contract(s) *shall not* apply to any newly signed contract(s) entered into by you and Cardinal Health after [*enter date two years after the entry of the Final Order*]. Cardinal Health is required under the Court Order to terminate your contract(s) within thirty (30) days of receipt of your written (email or letter) request. You should send any notice of termination to:

> *Name of Cardinal Health person*
> *Address and email of Cardinal Health person*
>
> cc: *Name of Monitor*
>     *Address and email of Monitor*

The FTC has appointed _____ to monitor Cardinal Health's compliance with its obligations under this paragraph of the Court Order. We encourage you to raise any questions you may have with us by calling your Cardinal Health sales representative or me directly at _____. You may also contact the monitor, who may be reached by telephone at xxx-xxx-xxxx or by e-mail at _____.

Sincerely,

[Cardinal Health Officer]

A-2